UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARCOS RAYOS #311171,

    Plaintiff,                                         Hon. Hala Y. Jarbou

v.                                                                Case No. 1:20-cv-968

PATRICK LEAVITT,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

This is a civil rights action brought pursuant to 42 U.S.C. § 1983 by a prisoner incarcerated with the Michigan Department of Corrections (MDOC). Plaintiff alleges that Defendant Corrections Officer Leavitt retaliated against him in violation of the First Amendment. The alleged retaliation occurred at the Carson City Correctional Facility (DRF), where Plaintiff is presently incarcerated.

Now before me are Defendant Leavitt's Motion for Summary Judgment (ECF No. 52), and Plaintiff's Motion for Declaratory Judgment (ECF No. 67). Pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that both motions be **DENIED**.

**I. Background**

Plaintiff alleges that on April 22, 2020, as he was leaving the law library at DRF, Defendant Leavitt noticed that he was wearing his COVID-19 mask with his nose protruding outside the mask. Leavitt stopped Plaintiff and warned him, "Pull up your mask before I tie it around your throat." (ECF No. 60-1 at PageID.426.) Plaintiff filed a grievance against Leavitt the same day. (ECF No. 53-2 at Page.349; ECF No. 60-1 at PageID.427.) Plaintiff stated in his Step I grievance

that Leavitt's comment "was a physical threat" that made him "feel fearful . . . after seeing [Leavitt] assault a restrained pris[oner]." (ECF No. 53-2 at PageID.349.) During the investigation, Leavitt denied threatening Plaintiff with physical harm, and instead claimed that he told Plaintiff to pull up his mask or he would "get a ticket." (*Id.* at PageID.352.) Corrections Officer Spiece, whom Plaintiff said was the only other person around, told the investigator that Leavitt had told Plaintiff to "pull his mask up over his nose or he would get a ticket." (*Id.*) Plaintiff's grievance was denied. (*Id.*)

Plaintiff alleges that on April 28, 2020, after Leavitt was interviewed on Plaintiff's grievance, Leavitt left the school building with another officer, walked into Plaintiff's housing unit, and proceeded to search Plaintiff and another prisoner. Plaintiff alleges that Leavitt told him that he would regret filing a grievance and that Leavitt then wrote Plaintiff a false Class II misconduct ticket for Insolence in retaliation for Plaintiff's grievance. (ECF No. 1 at PageID.4; ECF No. 53-5 at PageID.378.) On May 20, 2020, following a hearing on the misconduct ticket, Plaintiff was found guilty of the Insolence charge. (*Id.* at PageID.377.)

## II.  Motion Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th

Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

### III. Discussion

#### A. Motion for Summary Judgment

A plaintiff must prove the following elements to establish a prima facie case of retaliation: (1) he engaged in protected conduct; (2) the defendant took an adverse action against him "that would deter a person of ordinary firmness from continuing to engage in that conduct;" and (3) the adverse action was taken (at least in part) because of the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In addition, a plaintiff must be able to prove that the protected conduct was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). Once the plaintiff has met this burden, if the defendant can show that the same action would have been taken in the absence of protected activity, the defendant is entitled to prevail on summary judgment. *Thaddeus–X*, 175 F.3d at 399; *see Smith*, 250 F.3d at 1038.

Defendant Leavitt contends that Plaintiff's claim fails on the first and third elements. He further argues that he is entitled to qualified immunity. Leavitt does not dispute that a misconduct ticket can constitute adverse action for purposes of a prisoner's retaliation claim. *See Maben v. Thelen*, 887 F.3d 252, 267 (6th Cir. 2018).

#### 1. Protected Conduct

Leavitt contends that he is entitled to summary judgment because Plaintiff's April 22, 2020 grievance was both legally and factually frivolous and, therefore, cannot establish the requisite protected conduct.

3

"An inmate has a First Amendment right to file grievances against prison officials, provided that the grievance is non-frivolous." *Smith v. Craven*, 61 F. App'x 159, 162 (6th Cir. 2003) (citing *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001), and *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000)). A grievance is non-frivolous "only to the extent that the underlying claims ha[ve] merit." *See Herron*, 203 F.3d at 415 (stating that a prisoner's act of filing a grievance constitutes protected conduct). Regarding the non-frivolous requirement, the Sixth Circuit has observed:

> Some cases in this Circuit appear to suggest that a prisoner's grievance is frivolous when the underlying grievance itself is de minimis. *Ziegler v. State of Michigan*, 90 Fed. Appx. 808, 810 (6th Cir. 2004) (finding a grievance frivolous when the prisoner complained that the prison officer should "not be able to conduct a non-invasive pat-down search" of her); *White–Bey v. Griggs*, 43 Fed. Appx. 792, 794 (6th Cir. 2002) (finding grievances that "concerned being required to use a typewriter rather than a computer, and being required to sit quietly in defendant's office after being told again that there was no computer available for him to use" to be frivolous and not to "rise to the level of protected conduct"); *Scott v. Kilchermann*, 230 F.3d 1359, at *1–2 (6th Cir. 2000) (finding a grievance frivolous when the inmate complained that he had been subject to verbal abuse); *Thaddeus–X v. Love*, 215 F.3d 1327, at *2–3 (6th Cir. 2000) (finding a prisoner's threat to file a grievance against an officer for "eating waffles at a prison guard desk," which was against prison policy, "patently frivolous as the defendant's conduct had no adverse impact on [the prisoner]").

*Maben v. Thelen*, 887 F.3d 252, 264–65 (6th Cir. 2018).

Leavitt contends that the grievance was legally frivolous because it concerned nothing more than verbal abuse, which the Sixth Circuit has held amounts to a frivolous matter. *See Scott v. Kilchermann*, No. 99-1711, 2000 WL 1434456, at *2 (6th Cir. Sept. 18, 2000) (stating that "[a]n inmate has no constitutionally protected right to be free from verbal abuse"). Leavitt's statement, however, was not simply verbal abuse. While Leavitt may not have intended to convey that he would literally tie Plaintiff's mask around his throat, taken at face value, Leavitt threatened physical harm to Plaintiff. Thus, Plaintiff's grievance complained about more than verbal abuse or some act amounting to a mere annoyance or ordinary inconvenience of prison life.

Leavitt also contends that Plaintiff's grievance was factually frivolous because Corrections Officer Spiece—the only witness that Plaintiff identified—confirmed Leavitt's version that he told Plaintiff to pull his mask up over his nose or he would get a ticket. Leavitt argues that because Plaintiff's grievance was thoroughly investigated and disproved by Spiece's statements and denied at all three steps, his grievance was factually frivolous. But Leavitt's proposed standard for finding a grievance factually frivolous is too generous; if adopted, it would likely bar most prisoner retaliation claims where the respondent credits the MDOC employee's version over the prisoner's version. Leavitt's reliance on *Chrzan v. Mackay*, No. 1:19-cv-116, 2020 WL 7774741 (W.D. Mich. Nov. 30, 2020), *report and recommendation adopted*, 2020 WL 7773419 (W.D. Mich. Dec. 30, 2020), is misplaced. In *Chrzan*, video evidence showed that the plaintiff's grievance allegations were "verifiably untrue." *Id.* at *3. In this case, there was no similar video evidence. Rather, the grievance respondent simply accepted the MDOC employees' version over that of Plaintiff. This does not show that Plaintiff's grievance was factually frivolous. Moreover, there is no indication that Plaintiff was charged with a misconduct for making a false statement in his grievance. *See Maddox-El v. Hensen*, No. 2:15-cv-98, 2016 WL 3043139, at *2–3 (May 9, 2016), *report and recommendation adopted*, 2016 WL 3032739 (W.D. Mich. May 27, 2016).

    **2.**    **Causal Connection**

Leavitt next contends that Plaintiff cannot establish the requisite causal connection because Leavitt had a nonretaliatory basis for issuing Plaintiff the Insolence misconduct. In the misconduct report, Leavitt wrote that Plaintiff walked by him and, as he was entering the 1200 yard, Plaintiff turned around, made direct eye contact with Leavitt, and stated, "Just remember bitch I'm coming after you." (ECF No. 53-5 at PageID.378.) At the hearing, the hearing officer viewed the video and determined that it supported Leavitt's version because Leavitt and the other officer were already at the gate when Plaintiff walked past them and turned to say something to Leavitt. (ECF

No. 53-5 at PageID.377.) Leavitt argues that Plaintiff was properly charged with insolent behavior based on his threatening statement and the video evidence, which the hearing officer found contradicted Plaintiff's version.

Plaintiff responds that the record contains sufficient evidence to create a genuine issue of material fact with regard to causation. First, he notes that his own allegations in his verified complaint, as well as the allegations of prisoner Charles Ray Smith in his affidavit, support his claim that Leavitt told Plaintiff that he would regret filing a grievance against Leavitt. (ECF No. 60 at PageID.417.) Plaintiff further argues that the timing of the misconduct ticket is suspicious, as Leavitt issued the misconduct almost immediately after being interviewed on Plaintiff's grievance. (*Id.*) Plaintiff further contends that he would not have made the alleged threat to Leavitt because he had been misconduct-free for almost a year and was waiting on a Level II placement. (*Id.* at PageID.420.)

The Sixth Circuit has observed that "the temporal proximity between the prisoner's protected conduct and the official's adverse action" can provide circumstantial proof of the official's retaliatory motive. *Hill v. Lappin*, 630 F.3d 468, 475–76 (6th Cir. 2010). But it has also stated that temporal proximity, without more, is insufficient to demonstrate the requisite causal connection. *See Smith*, 250 F.3d at 1038. In *Holzemer v. City of Memphis*, 621 F.3d 512 (6th Cir. 2010), the court observed that, in general, the Sixth Circuit has been reluctant to find that temporal proximity, alone, can establish that the filing of a grievance was a motivating factor, but it acknowledged the court's statements in First Amendment cases in the employment context that "on a particular set of facts, extremely close temporal proximity could permit an inference of retaliatory motive." *Id.* at 526 (quoting *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 401 (6th Cir. 2010)); *see also Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (stating that

temporal proximity may be "significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive") (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)).

Here, Plaintiff notes the brief period of time between his filing of the grievance and the adverse action, but he does not rely solely on timing. Rather, he offers his own testimony, as well as the testimony of fellow prisoner Smith that Leavitt was angry about the grievance. Moreover, Leavitt has not presented the video evidence for the Court to consider, as it apparently no longer exists, and the Sixth Circuit has expressly rejected the "checkmate doctrine." *Maben*, 887 F.3d at 261–63. Relatedly, Leavitt neither argues, nor offers legal authority for, the proposition that a hearing officer's findings at a Class II misconduct hearing are entitled to preclusive effect in a subsequent retaliation claim by a prisoner.

Accordingly, a genuine issue of material fact remains as to the issue of a causal connection.

### 3. Qualified Immunity

Last, Leavitt contends that he is entitled to qualified immunity. The doctrine of qualified immunity provides that government officials performing discretionary functions are generally shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional right of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999). An "objective legal reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

The qualified immunity inquiry requires a court to decide whether the facts as alleged or shown make out a constitutional violation and whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 232. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either prong of the inquiry without regard to sequence. *Id.* at 236. As discussed above, an issue of fact remains as to whether Leavitt retaliated against Plaintiff for filing a grievance on April 22, 2020. The filing of a prisoner grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation, and that right was clearly established. *See Smith*, 250 F.3d at 1037. Accordingly, Leavitt is not entitled to qualified immunity on Plaintiff's claim.

  B. **Motion for Declaratory Judgment**

Plaintiff moves for a declaratory judgment, but he does not specify what he seeks the Court to declare. In fact, he does not ask the Court to declare anything. Instead, he complains that Leavitt submitted a corrected affidavit (ECF No. 64) after Plaintiff filed his response. (ECF No. 67 at PageID.471.) Plaintiff contends that the corrected affidavit, which submits Leavitt's complete affidavit that ECF No. 54 omitted, is an attempt to create "a sham factual issue by addressing those objections raised by [Plaintiff]" in his response. (*Id.*) Contrary to Plaintiff's argument, the corrected affidavit simply corrects counsel's previous filing error and does not attempt to create a sham factual issue. Moreover, as noted above, an issue of fact remains that precludes granting Leavitt's motion for summary judgment. Therefore, the harm that Plaintiff identifies in his motion does not exist.

Accordingly, Plaintiff fails to demonstrate an appropriate basis for a declaratory judgment, and his motion should be denied.

## IV. Conclusion

For the reasons set forth above, I recommend that the Court **deny** Leavitt's motion for summary judgment and Plaintiff's motion for a declaratory judgment (ECF Nos. 52 and 67).

Dated: February 22, 2022              /s/ Sally J. Berens
                                                                 SALLY J. BERENS
                                                                 U.S. Magistrate Judge

## **NOTICE**

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).